

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULISE NARBAIZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 17 |
| v. ) | |
| ) | Honorable Charles R. Norgle |
| TCF FINANCIAL CORPORATION, d/b/a ) | |
| TCF BANKS, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant TCF Financial Corporation's ("TCF") motion for summary judgment (the "Motion"), brought pursuant to FED R. OF CIV. P. 56. For the following reasons, the Motion is denied.

## I. Background[1]

### A. Facts

Plaintiff Julise Narbaiz ("Narbaiz"), a Hispanic woman of Mexican national origin, began her employment with Defendant TCF in 1993 as a part-time teller. Over the next decade Narbaiz received several promotions at TCF. In July 2005, TCF promoted Narbaiz again to the position of regional manager where she had the responsibility of supervising six branch managers. The regional manager job description is as follows:

> To provide leadership and direction for the sales, operations, practices and
> systems of the assigned region of the Retail Bank. To plan and direct the

---

[1] Unless otherwise attributed, the Court takes all facts presented in this Opinion from the parties Local Rule 56.1(a)(3) and 56.1(b)(3) Statements and Responses.

1

operations of the region in order to achieve defined goals and maintain a high level of customer service. To communicate information and ideas related to policy, employee issues, and business development to Senior.

Pl.'s Ex. M.

Narbaiz's 2005 performance review stated that she was "achieving expectations" and praised Narbaiz's ability to improve a region that had been underperforming in previous years.

In August 2006, TCF branches 98, 307 and 330 were placed under Narbaiz's supervision. Prior to August 2006, the three branches had been managed by Christopher Benko-Meyer ("Benko-Meyer"), a Caucasian TCF regional manager. According to Narbaiz, at the time of their transfer, branches 307 and 330 had problems with respect to operation, image, staffing, security and employee training. In Narbaiz's 2006 performance review, Camilla Stensen ("Stensen"), a Caucasian, who from January 2006 to December 2006 supervised both Narbaiz and Benko-Meyer, noted that two of the three branches Narbaiz assumed responsibility for in August 2006 had "critical staffing needs" which Narbaiz had quickly identified and worked efficiently to address. Stensen also acknowledged at her deposition that the employees at branches 98, 307 and 330 had not met their training requirements at the time of the transfer. In addition, Stensen admitted that the appearance of branches 307 and 330 improved under Narbaiz's supervision. Narbaiz's 2006 performance review again concluded that she was "achieving expectations."

In January 2007, branches 307 and 330 were reassigned to Benko-Meyer and branches 30, 291 and 296 were transferred to Narbaiz. Prior to the January 2007 transfer, Benko-Meyer managed branches 30, 291 and 296. In January or February of 2007, Narbaiz complained to her new supervisor Daniel Stewart ("Stewart") about the general conditions of the three branches. Stewart, supervisor of both Narbaiz and Benko-Meyer from January 2007 to October 2007,

2

visited the branches with Narbaiz and, according to Stewart's deposition, concluded that the branches had "areas of need" and required "additional organization." Stewart dep. at 59-60. Stewart told Narbaiz she had three months to correct the problems present in the branches.

On March 19, 2007, Narbaiz emailed Stewart a list of the challenges posed by the branches she received from Benko-Meyer in January 2007 and the improvements she had made to the branches, as well as the challenges and improvements she made to her other branches. See Pl.'s Ex. S. With respect to branches 30, 291 and 296, among other complaints, Narbaiz claimed that there was not a good focus on branch sales and that employee development was lacking. Id.

Approximately one month prior to her March 19, 2007 email, Narbaiz asked Michael Ferguson, who at the time was the branch manager of TCF's Munster location, to transfer to branch 296 because that branch was having trouble with operations and sales. Upon transferring, Ferguson discovered the branch had staff training and operations issues. A month or two after his transfer, Ferguson complained to Benko-Meyer's supervisor Stewart about the operational issues he encountered upon his arrival. Approximately eight months after Ferguson's transfer to branch 296, he asked Narbaiz for a transfer away from the branch, in part because he felt the sales goals for the branch were too high.

In August 2007, Stewart issued Narbaiz an "action plan" based on her "under-perform[ing]" sales production results for 2007. See Pl.'s Ex. AE. The action plan set forth sales production goals for Narbaiz to achieve in the next 90 days in the areas of checking, savings and business accounts. Throughout the 2007 calendar year Stewart discussed production numbers during his monthly meetings with all the regional managers under his supervision and during his separate monthly one-on-one meetings with each regional manager. Stewart, however, does not remember any specific conversations with Narbaiz concerning her production

3

numbers prior to his issuance of the action plan. According to Narbaiz, in July 2007, Stewart and Narbaiz did have a meeting regarding his concerns over her sales production in the areas of checking and savings.

During the meeting in which Stewart issued Narbaiz the action plan, Narbaiz refused to sign the plan. Instead, Narbaiz, who testified that she felt she was being discriminated against, told Stewart his issuance of the plan illustrated his favoritism towards Benko-Meyer. Specifically, Narbaiz noted that Benko-Meyer did not receive any disciplinary action even though Stewart was aware that the branches Narbaiz received from Benko-Meyer in January 2007 were in less than ideal condition with respect to bank operations. TCF admits that with respect to bank operation at the time Stewart issued the action plan, Narbaiz had a higher branch operation review average than Benko-Meyer for the months of July and August 2007 and that Narbaiz had the highest average branch operation score for all regional managers during those months.

On August 21, 2007, several days after Narbaiz received the action plan, Narbaiz sent a memo to Stewart, complaining that the operational and developmental issues affecting the branches she received from Benko-Meyer were hurting her region's sales production. Pl.'s Ex. R. Narbaiz indicated in the memo that Benko-Meyer was responsible for those cited developmental issues. Id. Lou Campos, director of retail banking for TCF's Lakeshore division and Peter Daugherty, retail production manager for TCF's Lakeshore division, also received the memo. TCF did not conduct any investigation as to the allegations in Narbaiz's memo.

According to Narbaiz, on September 7, 2007 she met again with Stewart about her sales production numbers and Stewart told her that upper management just wanted to see small

4

improvements in her sales numbers. However, all relevant TCF upper management personnel deny rescinding or modifying Narbaiz's action plan in any way.

In October 2007, Stewart was transferred to the position of director of business banking for TCF's Lakeshore division and, as a result, Tanya Aksu ("Aksu") took over as Narbaiz's supervisor in November 2007. Upon being transferred under Aksu's supervision, Narbaiz again complained, this time to Aksu, about Benko-Meyer and the condition of the branches she received from Benko-Meyer. Aksu testified that she asked Narbaiz what she had done to improve the condition of the branches and Narbaiz indicated that she had not had sufficient time to bring the branches up to her standards. See Aksu dep. at 20-21.

After Stewart's transfer, in late October or early November Aksu reviewed the year-to-date performance of all the regional managers newly assigned to her. Although Aksu made no specific reference to the importance of gross checking unit sales at her deposition, see generally Aksu dep., in her declaration, dated December 22, 2008, she states that, "When evaluating the performance of Regional Managers in 2007, I considered gross units (i.e., gross checking) to be the most important sales goal." Aksu decl. at ¶ 2.

After Aksu's review, she met with Michael Hersh, senior human resources manger for TCF's Lakeshore division, in mid to late November 2007, and according to their deposition testimony, the two decided to demote Narbaiz to the position of branch manager for her failure to show improvement on the action plan Stewart issued her. See Hersh dep. at 22; see also Aksu dep. at 44. Retail production manager Peter Daugherty, who had previously received Narbaiz's August 21, 2007 memo, authorized the decision. On November 30, 2007, Aksu informed Narbaiz that Narbaiz had the option of accepting a demotion to branch manager or being terminated. Narbaiz chose not to accept the branch manager position and was terminated.

5

Subsequently, TCF hired a person outside Narbaiz's protected class to assume her job responsibilities.

At the same time Aksu took over as Narbaiz's supervisor in November 2007, Aksu also assumed responsibility for the supervision of regional manager Ralph Czechowski ("Czechowski"). Aksu dep. at 34. Czechowski, a Caucasian, was promoted to the position of regional manager on July 15, 2007, approximately one month prior to Narbaiz's receipt of her action plan. Id. at 30-31. For the first two weeks of his employment as regional manager, Czechowski was supervised by Aksu. Id. at 34. On August 1, 2007, Stewart took over Czechowski's supervision. Id. In November 2007, Czechowski came back under Aksu's supervision following Stewart's transfer. Id. at 34-35. From August 2007 to December 2007, at the same time Narbaiz was making her complaints to TCF management about favoritism, Czechowski failed to meet TCF's sales goals for gross checking units for five straight months, but apparently did not receive any disciplinary action as a result. See generally Aksu dep.; see also Pl.'s Ex. T.

**Procedural History**

Narbaiz filed a formal racial discrimination charge with the EEOC on December 10, 2007. See Pl.'s Compl. ¶ 6. The EEOC issued Narbaiz a right to sue letter on December 31, 2007. See Notice of Rights. Narbaiz then filed a racial discrimination, national origin discrimination and retaliation complaint under 42 U.S.C. § 1981 and Title VII on January 2, 2008. On January 4, 2008, Narbaiz filed her First Amended Complaint. In response, TCF filed a motion for summary judgment. See Def.'s Mot. for Summ. J. The Motion is now fully briefed and before the Court.

## II. Discussion

## A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Vukadinovich v. Bd. of Sch. Trs. of North Newton Sch. Corp., 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chi., 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The inferences construed in the nonmoving party's favor, however, must be drawn from specific facts identified in the record that support that party's position. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v.

7

Christ Hosp. and Med. Ctr., 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990)).

## B. Narbaiz's Claims under 42 U.S.C. § 1981 and Title VII

### 1. Racial and National Origin Discrimination

Narbaiz brings both a racial discrimination claim under 42 U.S.C. § 1981 and a national origin discrimination claim under Title VII. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to the full and equal benefit of the laws ... as is enjoyed by white citizens." 42 U.S.C. § 1981. Under Title VII, employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1). In deciding motions for summary judgment, § 1981 and Title VII claims are analyzed under the same framework. Humphries v. CBOCS W., Inc., 474 F.3d 387, 403 (7th Cir. 2007).

"A plaintiff alleging race discrimination under Title VII and § 1981 can prove such discrimination either by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using indirect evidence and the burden-shifting method established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Alexander v. Wis. Dept. of Health and Family Serv., 263 F.3d 673, 682 (7th Cir. 2001) (citation omitted). Here, Narbaiz concedes that she cannot directly prove discrimination, and therefore she must indirectly establish discrimination under the McDonnell Douglas burden-shifting method.

In order to set forth a prima facie case under McDonnell, a plaintiff must establish the following elements: "(1) she was a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated

8

employees not in the protected class were treated more favorably." Goodwin v. Bd. of Trs. of Univ. of Ill., 442 F.3d 611, 617 (7th Cir. 2006). If plaintiff "successfully establishes each element of the prima facie case, the burden shifts to the [defendant] to assert a legitimate, nondiscriminatory reason for the challenged action." Id. "If [defendant] does so, the burden then shifts back to [plaintiff] to present evidence that would allow the trier of fact to conclude that the [defendant's] proffered reason is pretextual." Id. at 617-18.

Where, however, "a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner, . . . , the second and fourth prongs of McDonnell Douglas merge-allowing the plaintiff to establish a *prima facie* case, stave off summary judgment for the time being, and proceed to the pretext inquiry." Peele v. County Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir. 2002). Thus, if a plaintiff raises an inference that an employer applied its legitimate employment expectations in a disparate manner, she need not produce evidence that she was meeting her employer's legitimate employment expectations. Curry v. Menard, Inc., 270 F.3d 473, 478 (7th Cir. 2001)

### a. Narbaiz's Prima Facie Case

In the present case, Narbaiz established a prima facie discrimination case under McDonnell because TCF does not dispute that she is a member of a protected class who suffered an adverse employment action and Narbaiz has put forth evidence sufficient to raise an inference that TCF was applying its legitimate employment expectations in a disparate manner. More specifically, Narbaiz has raised an inference that TCF was harsher in applying its gross checking unit sales goals to Narbaiz than it was to Caucasian regional manager Czechowski.

In order to demonstrate that TCF applied its legitimate employment expectations in a disparate manner, Narbaiz must show that TCF "applied certain standards to [her] but not to

9

similarly situated employees who were not members of the same protected class." Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 846 (7th Cir. 2007) (citing Peele, 288 F.3d at 330). A plaintiff may demonstrate that another employee is "similarly situated" to her by "show[ing] that there is someone who is directly comparable to her in all material respects." Peele, 288 F.3d at 330 (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676 680 (7th Cir. 2002)). "[I]n disciplinary cases-in which a plaintiff claims that [she] was disciplined by [her] employer more harshly than a similarly situated employee based on some prohibited reason- a plaintiff must show that [she] is similarly situated with respect to performance, qualifications, and conduct. Id. (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)) (quotations and emphasis omitted). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id. (quoting Radue, 219 F.3d at 618) (quotations and emphasis omitted); see also Lucas v. Pyramax Bank, FSB, 539 F.3d 661, 667 (7th Cir. 2008) ("[A] coworker must possess a 'comparable set of failings' to be similarly situated to the fired employee.") (quoting Burke v. Wis. Dep't of Transp., 464 F.3d 744, 751 (7th Cir. 2007)).

However, as the Seventh Circuit recently cautioned, "[t]he similarly-situated requirement should not be applied mechanically or inflexibly, but rather is a common-sense flexible inquiry that seeks to determine whether there are enough common features between the individuals to allow a meaningful comparison." Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 831 (7th Cir. 2007) (citing Humphries, 474 F.3d at 404-05). Therefore, "[s]ubstantial similarity, not complete identity, is required." Id.

There is no dispute that after July 15, 2007, Narbaiz and Czechowski were both regional managers with the same supervisors and that both failed to meet TCF's gross checking unit sales goals during the 2007 calendar year. The evidence, taken in a light most favorable to Narbaiz, shows that: (1) regional manager supervisor Aksu, when evaluating Narbaiz and Czechowski, considered gross checking units the most important sales goal; (2) Narbaiz achieved 81.38% of her gross checking goal for 2007, Hersh decl. at § 16; (3) Czechowski achieved 80.32% of his gross checking goal for 2007, Pl's. Ex. T; (4) Narbaiz was asked by Aksu to accept a demotion; and (5) Czechowski did not receive any sort of disciplinary action from Aksu. In this context, Aksu's failure to discipline Czechowski for his "comparable set of failings" - his inability to meet the same sales goal that caused Narbaiz's demotion - raises the inference that TCF applied its legitimate employment expectations to Narbaiz in a disparate manner. See Curry, 270 F.3d at 478-80 (holding that summary judgment was not proper in a Title VII racial discrimination case where plaintiff, a cashier, was allegedly fired for having three "cash discrepancies," even though two other cashiers who were not members of plaintiff's protected class, had two or more cash discrepancies but were neither suspended nor terminated); see also Belour v. Adapt of Ill., Inc., 460 F.Supp.2d 867, 874-75 (N.D. Ill. 2006) (holding that plaintiff raised an inference that her employer applied its legitimate employment expectations in a disparate manner where plaintiff was ostensibly fired for excessive tardiness even though similar employees outside plaintiff's protected class with similar attendance records were not terminated).

Defendant contends that Czechowski cannot be considered comparable to Narbaiz because he only became a regional manager in July of 2007, while Narbaiz had been working as a regional manager for almost two and a half years at the time of her firing. Defendant cites to Gross v. Radioshack Corp., No. 04 C 4297, 2007 WL 917387 (N.D. Ill. Mar. 26, 2007) as

11

support for the proposition that a newly promoted "rookie" employee cannot be "similarly situated" to an experienced employee. See Def.'s Rep. at 5. Gross only held, however, that the fact that plaintiff's co-employee was a "three month rookie," "weigh[ed] against a finding that he was similarly situated to [plaintiff]." 2007 WL 917387 at *15. Czechowski, in contrast to the "rookie" in Gross, had been working as a regional manager for almost six months by the end of 2007. Thus, the Court cannot say that Czechowski's relative inexperience, on its own, rendered him incomparable to Narbaiz for § 1981 purposes where the two were similarly situated in all other material respects. See Elkhatib, 493 F.3d at 831 (holding that individuals need not be completely identical in order to be similarly situated).

### b. Pretext

Aksu's failure to discipline Czechowski for his inability to meet TCF's gross checking unit sales goals also creates a question of fact regarding whether TCF's proffered reason for firing Narbaiz – Narbaiz's "dismal performance regarding new checking accounts opened," Def.'s Rep. at 1 – was pretextual. See Olson v. N. FS, Inc., 387 F.3d 632, 636 (7th Cir. 2004) (holding that courts can draw inferences of pretext from evidence that establishes plaintiff's prima facie discrimination case). To show pretext, Narbaiz "bears the burden of demonstrating that [TCF's] ostensible justification for its decision is unworthy of credence." Gordon v. United Airlines, Inc., 246 F.3d 878, 888 (7th Cir. 2001) (citations omitted); see also Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.") (quotations and citations omitted). The Court's only concern in a pretext inquiry "is whether the legitimate reason provided by the employer is in fact the true one." Id. Narbaiz "may make the requisite showing by providing 'evidence tending to prove that the employer's proffered reasons

12

are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" Gordon, 246 F.3d at 888-89 (quoting Adreani v. First Colonial Bankshares, Corp., 154 F.3d 389, 395 (7th Cir. 1998)); see also Adreani, 154 F.3d at 395 ("[W]hen the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a fact finder may reasonably infer that unlawful discrimination was the true motivation . . . .").

Here, TCF's decision not to discipline Czechowski casts doubt on the sincerity of TCF's claim that Narbaiz was demoted because of her "dismal" checking account sales performance in 2007. If checking account sales were as important to TCF as TCF suggests, Czechowski's consistent inability to meet his checking account goals in 2007 would seem likely to have produced some disciplinary response from TCF. However, only Narbaiz was disciplined for her failure to meet TCF checking goals, even though Narbaiz and Czechowski held the same position and were supervised by the same individuals. This apparent inconsistency, notwithstanding TCF's contention that Czechowski was treated differently because he was a new regional manager, creates a question of fact as to the honesty of TCF's asserted reasons for demoting Narbaiz. See Gordon, 246 F.3d at 890-91 (finding a question of fact as to pretext where plaintiff's co-employees were allowed to retain their jobs after they engaged in the same conduct that allegedly caused plaintiff to be terminated).

Moreover, TCF's explanation for demoting Narbaiz has not remained entirely consistent. See Pantoja, 495 F.3d at 851 (quoting Schuster v. Lucent Techs., Inc., 327 F.3d 569, 577 (7th Cir. 2001)) ("[S]hifting and inconsistent explanations can provide a basis for a finding of pretext . . . ."). For example, at Aksu's deposition, when asked the reason for Narbaiz's demotion, Aksu referred generally to Narbaiz's allegedly inadequate response to the action plan she was issued,

but she did not make specific reference to gross checking unit sales. Aksu dep. at 44. In Aksu's later declaration, however, she stated that when evaluating the regional managers' performance in 2007, she weighed most heavily the regional managers' gross checking unit performance. Aksu decl. at ¶ 2. In this context, Aksu's increased emphasis on Narbaiz's gross checking unit sales performance in her declaration could be interpreted as a shifting explanation, and therefore constitute grounds for a finding of pretext, especially where Aksu did not specifically reference Narbaiz's checking unit sales in her deposition. See Pantoja, 495 F.3d at 851 (holding that defendant's proffer of multiple reasons for defendant's firing created a question of material fact as to pretext even though the reasons were not necessarily contradictory).

## 2. Retaliation

Narbaiz also brings retaliation claims under both Title VII and § 1981, claiming that she was demoted because she opposed the "creation of a discriminatory work environment" at TCF. Compl. at ¶¶ 50, 58. The analysis of a retaliation claim is the same under both Title VII and § 1981. Pantoja, 495 F.3d at 848. Title VII prohibits employers from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this title, or because he has made a charge . . . under this title." 42 U.S.C. § 2000e-3(a). A plaintiff can establish her retaliation claim through direct or indirect evidence. Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 784 (7th Cir. 2007). Here, Narbaiz concedes that she must establish her claim through indirect evidence. As a result, Narbaiz's retaliation claim is analyzed under the same McDonnell Douglas burden-shifting framework that applied to her race and national origin discrimination claims, with the notable difference that Narbaiz must also prove that she "engaged in statutorily protected activity." Id. at 785. The Court's analysis of Narbaiz's retaliation claims will thus focus solely on whether her complaints regarding alleged favoritism

towards a co-employee outside her protected class constituted "statutorily protected activity," as the court has already concluded that Narbaiz has put forth sufficient evidence to survive summary judgment with respect to the other McDonnell Douglas elements, including pretext. See supra § II.B.1.

"A plaintiff need not use . . . magic words . . . to bring her speech within Title VII's retaliation protections." Sitar v. Ind. Dept. of Transp., 344 F.3d 720, 727 (7th Cir. 2003). However, "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006) (citation omitted). In the present case, according to Narbaiz, she made at least three in-person complaints to her supervisors about the favoritism TCF management allegedly demonstrated toward a co-employee who was not within her protected class. In Narbaiz's meetings with her supervisors and in her August 21, 2007 memo, where she outlined her allegations of favoritism, she referred to her Caucasian co-employee by name. In this context, although Narbaiz did not explicitly refer to her co-employee's race, considered in the light most favorable to Narbaiz, her repeated allegations of favoritism that made reference to a specific employee who is outside her protected class are enough to create a question of material fact as to whether her complaints were sufficient for one to draw the inference that those complaints were connected to her protected class. See Kruger v. Principi, 420 F.Supp.2d. 896, 910 (N.D. Ill. 2006) ("Informal complaints to supervisors may constitute protected activity [under Title VII].").

## III. CONCLUSION

For the foregoing reasons, TCF's motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: March 12, 2009